**E-FILED**
Tuesday, 04 November, 2008  10:16:05 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

_____

| | |
|---|---|
| **MARY ERIN MILLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 07-CV-2119** |
| ) | |
| **AMERITECH LONG TERM DISABILITY** ) | |
| **PLAN,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

On June 26, 2007, Plaintiff, Mary Erin Miller, filed her Complaint (#1) against Defendant, Ameritech Long Term Disability Plan. Plaintiff brought her action under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended (29 U.S.C. § 1132(a)(1)(B)). Plaintiff alleged that she became eligible for long term disability benefits under the Plan provided by Defendant. Plaintiff alleged that Defendant unilaterally terminated her benefits effective October 1, 2006. She alleged that Defendant's unilateral action violated the terms of the Plan. Plaintiff asked this court to enter judgment against Defendant for all unlawfully withheld amounts of disability benefits to which she is entitled, together with statutory interest, as well as her reasonable attorney's fees and litigation expenses.

This case is now before the court for ruling on Defendant's Motion for Summary Judgment (#19). This court has carefully reviewed the arguments of the parties and the complete administrative record provided by Defendant. Following this careful review, Defendant's Motion for Summary Judgment (#19) is GRANTED.

FACTS[1]

Plaintiff is currently 48 years old.  She was employed by Illinois Bell Telephone Company[2] from 1986 until she took short-term disability leave in May 2005 due to back problems.  In January 2006, Plaintiff was notified that her short-term disability benefits would end on April 9, 2006, but that she might be eligible for long-term disability benefits under the Ameritech Long Term Disability Plan (Plan) if she met the Plan's criteria.  Under the Plan, participants are eligible to receive monthly payments provided that they meet the Plan's definition of "disabled."  The Plan states:

> "Disability" or "Disabled" . . . shall mean an illness or injury, other than accidental injury arising out of and in the course of employment by the Company, or a Participating Company, supported by objective medical documentation, that prevents the Eligible Employee from engaging in any occupation or employment (with reasonable accommodation as determined by the Company or its delegate), for

---

[1]  As explained below, this court's review is limited to the evidence in the administrative record.  See Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 662 (7th Cir. 2005).  Accordingly, this court has not considered the affidavits and exhibits submitted by Plaintiff with her Response to the Motion for Summary Judgment.  This court notes that Plaintiff has attempted to show bias on the part of the doctors who reviewed her medical records during her appeal of the decision to terminate her disability benefits.  This court notes, however, that the "fact that a doctor is regularly consulted by an insurance company (or defense interests more generally) does not, *ipso facto*, render the doctor biased."  Broeski v. Provident Life & Acc. Ins. Co., 2007 WL 1704012, *2 (N.D. Ill. 2007).

[2]  Defendant has noted that, since Plaintiff was first employed, Illinois Bell Telephone Company and its parent companies have been involved in a series of mergers.  Some of these transactions resulted in changes to the name of the Plan.  This court agrees with Defendant that, for purposes of this case, Illinois Bell and all of its parents and affiliates (including SBC Corporation) can be referred to as the same entity.

> which the Eligible Employee is qualified, based on training,
> education, or experience.   An employee shall continue to be
> considered disabled if prevented by reason of such illness or injury,
> supported by objective medical documentation, from working at a job
> which pays wages which, when combined with benefits payable from
> the Plan, equal less than 75% of the Eligible Employee's Base Pay at
> the time the Disability occurred.

The Plan further provides that the "Committee has full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with Plan terms."

In January 2006, Plaintiff applied for long-term disability benefits under the Plan.  In support of her application for benefits, Plaintiff provided the notes of her treating physician, Dr. Russell Nockels.  Dr. Nockels notes, dated January 26, 2006, stated:

> Mary returns 3 months following her second surgery.  She is doing
> well.   We will return her to work full-time with restrictions, and
> prescribe continued physical activity and Elavil.   I plan to see her
> again in 6 weeks.  Her xrays today look fine.

Consistent with those notes, on January 27, 2006, Dr. Nockels advised the Claims Administrator that Plaintiff could return to work full-time effective January 30, 2006, so long as she was restricted from lifting anything heavier than 10 pounds, repetitively bending, lifting or twisting, and driving more than 30 minutes at a time.

Subsequently, Plaintiff provided Dr. Nockels' March 23, 2006, notes, which stated:

> Mary is making slow but steady progress.  Her wound is healed,
> although she still has significant back pain.  Her leg pain is gone.
> I believe she will never return to full employment lifting greater than
> 50#.  However, at this juncture she is making sufficient progress to
> go back to work at a sedentary level as of 3/27.  I provided her
> documentation for this.

On March 30, 2006, the Claims Administrator noted that Dr. Nockels provided the following restrictions on Plaintiff's ability to work: "sedentary position only no lifting >20lbs no repetitive bending, lifting, twisting, duration 3 months."  The notes stated that Dr. Nockels had imposed a permanent restriction of no lifting more than 50 pounds.

To determine whether Plaintiff could perform any job within the medical restrictions provided by Dr. Nockels, the Claims Administrator conducted a Transferable Skills Assessment on April 3, 2006.  The report stated:

> By way of summary, the employee is a 46 year old female who
> ceased work as a Customer Systems Tech on 1/31/06 due to
> osteophyte formation @ L3-4 & @ L5-S1 & disc degeneration w/a
> post annular tear & superimposed central posterior disc herniation.
> She resides in Decatur, IL (which is approximately 50 miles from
> Champaign, IL) and her case manager has identified her gainful wage
> as $14.10 per hour in a 40-hour workweek.  Her date of hire was
> 3/6/89.

The report also stated that Plaintiff had completed high school and one year of college and reported

4

having computer skills.  The report listed Plaintiff's work experience since 1981 and stated that Plaintiff's most recent job as a customer systems technician is listed as "heavy skilled work capacity" and "involves installing and repairing telephone and telegraph lines, poles and related equipment."  The report concluded:

> Based on the above stated work history, she would have demonstrated the following skills: the ability to problem solve, communication skills in a wide variety of situations, ability to work with small hand tools, perform routine and repetitive tasks, accurately record, code and classify information and knowledge of electrical functions.  Ms. Miller should have the ability to make decisions, communicate, familiarity w/ keyboarding and various computer systems, sort, file, and have basic general office skills.
>
> At this point in time Ms. Miller only has sedentary work capacity and she has a high gainful wage of $14.10.  Given the wage is so high and her physical ability is very limited, no gainful occupations can be offered at this time.  Please refer file in again once the restrictions change.

Based upon the Transferable Skill Assessment, the Claims Administrator approved Plaintiff's application for long-term disability benefits under the Plan in a letter dated April 11, 2006.

On July 30, 2006, in response to the Claims Administrator's request that she update her medical information, Plaintiff completed an Employee Disability Questionnaire.  In response to the question, "Do you have plans to return to work in the future?" Plaintiff responded, "Yes, but [I] need

to find a job that I can do." Plaintiff also stated that she did not "do much" and had a "hard time sleeping at night, due to back pain." She stated that "[i]f I take the sleeping pills the doctor gave me - I'm groggy all day and still have back pain." Plaintiff stated that she was unable to carry laundry and could do no bending. She stated that she did not drive very often and "can't sit for very long in car, so don't go too far." Plaintiff listed the medications she was taking.

On September 13, 2006, Dr. Nockels completed a "Certificate to Return to Work or School" for Plaintiff. The Certificate stated that he had examined Plaintiff on June 28, 2006, and that Plaintiff was able to return to work with the following limitations: "Moderate work level: No lifting >20 lbs. Limited bending, twisting[,] Frequent position changes." Dr. Nockels stated that these "restrictions are permanent." After receiving this Certificate, the Claims Administrator conducted another Transferable Skills Assessment on October 12, 2006. The report stated that Plaintiff' work restrictions were "moderate work level, no lifting >20lbs, limited bending, twisting, frequent position changes." The report stated that the "restrictions are permanent." Based upon these work restrictions provided by Dr. Nockels, the Claims Administrator identified six sedentary positions in which Plaintiff could earn as much as or more than her previous position: Dispatcher, Motor Vehicles; Secretary; Customer Account Clerk; Expediter; Dispatcher, Generic; and Customer Service Rep.

On November 6, 2006, the Claims Administrator sent a letter to Plaintiff which stated that, "based upon your training, education and experience" and the restrictions and limitations imposed by Dr. Nockels, a vocational assessment had identified six occupations she "should be able to perform" which would provide at least 50% of her basic wage rate at the time long-term disability started. The letter then listed the six identified positions. The letter stated that Plaintiff no longer

qualified for payment under the Plan as of October 1, 2006.  The letter also advised Plaintiff of her

appeal rights.  The letter stated:

> In your appeal, please state the reason(s) you believe your claim
> should not be denied.  You may also submit additional medical or
> vocational information, and any facts, data, questions, or comments
> you deem appropriate for us to give your appeal proper consideration.
>
> . . . .
>
> You shall be provided, upon written request and free of charge,
> reasonable access to, and copies of, all documents, records, and other
> information relevant to your claim for benefits.

On January 12, 2007, Plaintiff appealed the decision to discontinue her long-term disability

benefits.  Plaintiff submitted a statement regarding her condition.  She stated:

> My level of functionality impacts my ability to work because I have
> horrific pain in my lower back that limits my ability to sit and stand
> for very long.  This pain is causing extreme anxiety which, in turn,
> causes migraine headaches.  The pain makes it impossible to sleep for
> any length of time.
>
> Even the most mundane daily chores such as lifting a basket of
> laundry, or even a gallon of milk, are troublesome.  Simple activities
> that used to give me great pleasure, such as gardening, now cause
> such pain that I'm unable to enjoy old hobbies.
>
> Based on your determination of my job training and restrictions, it

appears there are no jobs available in Decatur, IL.  I have applied for several jobs, but it seems with the restrictions I have, no one will hire me.

. . .  I have worked at various jobs since I was 16 years old.  I enjoyed my years working for SBC and had no intention of retiring until this injury made it impossible for me to work.  I would be more than willing to resume working for SBC if they could find a job for me that will take into account my limited mobility.

Enclosed you will find a letter from Dr. Nockels.  I hope it gives you a clear outline of my level of functionality and all the medical evidence you require.

Plaintiff did, as she indicated, attach a letter from Dr. Nockels dated December 21, 2006. Dr. Nockels stated:

Ms. Miller returns for followup.  She has continued low back pain syndrome months following her lumbar diskectomy and fusion.  Her pain is such that she finds any position intolerable for a long period of time.  She has great difficulty sleeping, sitting, and standing and even driving a car for long distances.  During the office visit today, she had to change positions several times during our discussion.

Her neurological examination is unchanged, and her wound, of course, is completely healed.  I had the opportunity to review her lumbar spine films, which demonstrate some lucency, particularly

8

around the left SI screw.

I think that Ms. Miller's intolerance to discomfort may in fact represent some difficulty with her posterior instrumentation. She certainly seems to have a solid arthrodesis, again, with regard to her plain films, although we will confirm this with a CT scan. I have offered her a course of physical therapy, which I hope will alter the load-bearing characteristics of her lumbar spine and perhaps obviate the need for explantation of her implant. Otherwise I would offer her removal of her screws and rods as a means of hopefully furthering her progress.

I have been asked to address some degree of functionality with regard to her situation. I had previously indicated that she was at a moderate level of activity. I do not believe that she should be working, however, at this stage because of the pain syndrome that I have previously outlined. I know that a detailed description of these issues is required, and I hope that the preceding paragraph rises to that level. If there are further questions regarding this, I would be pleased to address them.

Dr. Nockels' progress note report dated December 22, 2006, stated:

[Plaintiff] returns for evaluation lumbar fusion in 8/05. The patient states that she has increased symptoms of back pain. She cannot tolerate any type of prolonged positioning because of the pain and

9

has difficulty sleeping at night.  She had been prescribed Elavil for

the pain and to help with sleeping which makes her groggy during the

day, therefore she does not want to take it.  She is inquiring about

long term disability today.  We had the patient obtain xrays today

which show normal alignment and stabilization of the

instrumentation.  On PE, motor is 5/5 in [bilateral lower extremities]

with normal sensation. [Deep tendon reflexes] are decreased in

[bilateral lower extremities].

On January 15, 2007, the Claims Administrator sent Plaintiff a letter which acknowledged

receipt of Plaintiff's request for an appeal of the termination of her benefits.  The letter stated that

her request for appeal would be reviewed by the A T & T Integrated Disability Service Center

Quality Review Unit (Unit) and that she would receive a written response by February 26, 2007.

Subsequently, the Claims Administrator provided two doctors, Dr. Saad M. Al-Shathir and Dr. J.

Parker Mickle, with Plaintiff's medical records so they could evaluate her ability to work.  Based

upon his review of Plaintiff's records, Dr. Al-Shathir prepared a report which stated:

[Plaintiff] has a history of two lumbar disc surgeries in 1994 & 1996.

She has been off work since 5/11/05.  She underwent lumbar fusion

on 8/23/05 and on 10/7/05 she had right L5 foraminotomy and

removal of some of the hardware.  She reported persistent back pain

and treated with pain medication and PT.  On 3/23/06 her surgeon

recommended return to a sedentary job. [Plaintiff] reported in her

letters that she was willing to return to work, but couldn't find

10

anyone to hire her.

Dr. Al-Shathir concluded that Plaintiff "is not disabled from any job from 10/1/06 to present."  He stated that "[t]here are no clinical findings in the record that would impact her ability to function at a sedentary level."  Dr. Al-Shathir stated that "[t]he reported surgeries are clinically insignificant since she has documented solid fusion/arthrodesis at the site of the surgery with no documented neurological deficits."  He also stated that "[t]he reported surgery documented no complication with solid fusion."  He stated, "[s]he is released to a sedentary job by her treating surgeon, thus she is not completely disabled from any job."

Dr. Mickle also prepared a report.  In his report, Dr. Mickle stated that, following Plaintiff's surgery in October 2005, Plaintiff's "leg pain had improved and was essentially gone, but she was extremely uncomfortable with back pain."  Dr. Mickle stated that "[h]er physician had recommended [a functional capacity] evaluation [FCE] in her ability to return to work, but this is not available for review."  Dr. Mickle concluded that Plaintiff "is not disabled from completing any job from 10/01/06 to present."  He also stated:

> The clinical findings in this report are historical in that she is suffering from back pain.  There is some indication that she may have difficulty with her fusion hardware, but this is not clear.  The pain that she is suffering is not quantified and she continues to take over-the-counter medications for semi-control of this pain.  Neurological examinations have remained normal.
>
> . . .
>
> The historical note of continued back pain in this patient and at this

11

point appeared to be not clinically significant in terms of this patient's ability to return to a sedentary DOT classification occupation.

**RATIONALE:** Following these kinds of surgeries with a successful fusion, which this patient has, it is not uncommon for chronic pain to be a problem associated with restrictions and limitations in performing any occupation. On several occasions over the past two years, the physician in charge of this patient has attempted to return her to the workforce with restrictions and limitations, but this has not occurred. The recommended FCE to this reviewer has not been accomplished.

On February 26, 2007, Plaintiff was notified by letter that the Unit reviewed her appeal of the denial of benefits. The letter stated that the Unit reviewed all of the medical documentation. The letter stated:

After review of the medical information by the Unit and the independent physician advisors, the decision was made to uphold the denial for the denial/appeal period.

The independent physician advisor, Saad M. Al-Shathir, MD, specializing in physical medicine and rehabilitation, reported there was no documented evidence of neurological deficits. He further indicated there was a lack of observable medical findings, such as functional limitations that would have indicated that you were unable

12

to perform any job duties for the time period under review.

The independent physician advisor, J. Parker Mickle, MD, specializing in neurosurgery, reported that the neurological examinations remained normal for the time period under review. He also indicated that from a neurosurgery perspective there was a lack of evidence of observable medical findings that would have indicated you were unable to perform any job duties for the time period under review.

Although some findings are referenced, none are documented to be so severe as to prevent you from working at any occupation or employment for which you are qualified, or may reasonably become qualified based on training, education and experience as of October 1, 2006.

The letter stated that, under the terms of the Plan, "the decision of the Unit is final." The letter further advised Plaintiff of her right to bring suit under ERISA.

On March 3, 2007, Plaintiff faxed a letter to the A T & T Integrated Disability Service Center and requested copies of all documents, records and other information relevant to her claims benefits. Plaintiff also stated that "[d]ue to the fact that I have to take Vicodin and Valium everyday for the pain I am in, I hardly think anyone would hire me at this point." On April 30, 2007, Plaintiff, through her attorney, sent a letter to the Plan which stated that the decision to deny Plaintiff benefits was without legal or factual support. Plaintiff's attorney attached medical records which post-dated the denial of her appeal. These records stated that Plaintiff was scheduled for surgery in July 2007.

On June 18, 2008, the Claims Administrator sent Plaintiff a letter which again advised her that the

decision of the Unit on February 26, 2007, was final and that she had the right to bring suit under

ERISA.

PROCEDURAL HISTORY

As previously noted, Plaintiff filed her Complaint (#1) in this court on June 26, 2007.  On

April 9, 2008, Defendant filed a Motion for Protective Order (#12).  In its Memorandum in Support

(#13), Defendant provided documentation showing that Plaintiff was attempting to schedule

depositions and obtain documents which were not part of the administrative record.  On April 22,

2008, Defendant filed the Administrative Record (#15) with this court.  Defendant included the

Declaration of Nancy Watts.  Watts stated that she was employed by A T & T Services in the

position of Senior Benefits Analyst.  Watts stated that the Plan provides that Ameritech Corporation

is the Plan Administrator and that the Plan confers discretionary authority on the Plan Administrator

to determine Plan eligibility.  Watts also stated that the Plan gives the Plan Administrator the right

to appoint one or more Claims Administrators, who have discretionary authority to grant and deny

claims and determine Plan eligibility.  Watts stated that, effective July 1, 2001, the Plan

Administrator appointed third party administrator Sedgwick Claims Management Services

(Sedgwick) as the Claims Administrator for the Plan.  Sedgwick has continuously been the Claims

Administrator since that date.  Watts stated that Sedgwick is paid a flat fee for its services, unrelated

to whether if finds for or against disability, and plays no role in funding or budgeting claims for

payment.  Defendant also included the Declaration of Susan Hagestad.  Hagestad stated that she is

employed by Sedgwick as an Appeal Manager.  She stated that, in that position, she is responsible

for, among other things, reviewing claims for benefits under the Plan and determining whether to

approve or deny those claims.  Hagestad stated that complete copies of all materials that were submitted to or considered by Sedgwick in its role as Claims Administrator concerning Plaintiff's claim were attached (as the administrative record).

On May 16, 2008, Magistrate Judge David G. Bernthal entered an Order (#17).  Judge Bernthal stated that, because the Plan gives the administrator discretion to interpret the plan terms or determine benefits eligibility, a deferential arbitrary and capricious standard of review applies to this case.  Judge Bernthal further stated that deferential review of an administrative decision means review on the administrative record.  Judge Bernthal therefore granted Defendant's Motion for Protective Order and ordered that Plaintiff was not allowed to engage in supplemental discovery.  Judge Bernthal noted, however, that Defendant was obligated to provide a complete administrative record.  Therefore, Judge Bernthal further ordered that, to the extent the administrative record was incomplete, Defendant was directed to provide Plaintiff with additional materials needed to complete the record.

On July 2, 2008, Defendant filed the Declaration of Susan Hagestad (#18).  In her Declaration, Hagestad stated that, in response to Judge Bernthal's Order, she searched for documents, records, or other information generated in the course of making the determinations on Plaintiff's claim for benefits under the Plan without regard to whether they were relied upon in making the benefit determinations.  Hagestad stated that she was unable to locate any such documents that were not previously included in the administrative record submitted to the court. Hagestad stated that "[c]onsequently, the Administrative Record contains all documents that were submitted, considered, or generated in the course of making the benefit determinations on [Plaintiff's] claim for benefits under the Plan without regard to whether they were relied upon in

making the benefit determinations."

On July 16, 2008, Defendant filed a Motion for Summary Judgment (#19) and a Memorandum in Support (#20).  On August 11, 2008, Plaintiff filed her Response (#21) with attached exhibits.  On August 25, Plaintiff filed a Motion to Re-open Discovery (#23) and a Memorandum of Law in Support (#24).  Plaintiff argued that, based upon the recent decision of the United States Supreme Court in Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), the law has changed and she is entitled to discovery as to her claim of conflict of interest in the decision-making process.  Plaintiff also filed a Motion to Submit Additional Authority in Response to Motion for Summary Judgment (#25) and a Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Additional Discovery (#26).  In her Motion to Submit Additional Authority (#25), Plaintiff argued that the Glenn decision "is on point and affirmed a decision from the Sixth Circuit Court of Appeals, reversing the decision of the District Court denying relief."  She therefore asked this court to consider and apply the Glenn decision when ruling on Defendant's pending Motion for Summary Judgment.  In her Motion to Defer Ruling (#26), Plaintiff asked this court to defer ruling on Defendant's Motion for Summary Judgment until she "has been given an opportunity to conduct discovery."

On August 29, 2008, Defendant filed its Reply (#27) to Plaintiff's Response to its Motion for Summary Judgment.  On September 11, 2008, Defendant filed a Joint Response to Plaintiff's Motion to Re-open Discovery, to Submit Additional Authority and to Defer Ruling on Motion for Summary Judgment (#29).  Defendant stated that all three of Plaintiff's Motions are based on a fundamental misunderstanding of the decision in Glenn.  Defendant argued that Glenn's dual-role conflict analysis does not apply where, as here, one entity determines claims for benefits and a

16

different entity is responsible for paying any claims.  Defendant argued that <u>Glenn</u> does not either explicitly or implicitly change the long-standing rule against conducting discovery in ERISA cases. Defendant argued that, because <u>Glenn</u> does not authorize further discovery in this case, there is no basis to reopen discovery and no reason to defer ruling on summary judgment.  Defendant also argued that, because <u>Glenn</u> is inapplicable, there is no need to submit it as additional authority relative to Defendant's Motion for Summary Judgment.

On October 6, 2008, Judge Bernthal entered an Order (#30).  Judge Bernthal stated that he had considered Plaintiff's Motion to Re-open Discovery and supporting memorandum, as well as Defendant's Response.  Judge Bernthal stated that he determined that nothing in <u>Glenn</u> called into question the court's original decision regarding discovery.  Judge Bernthal stated that <u>Glenn</u> dealt with a situation where a single entity determined who is eligible for benefits and then paid those benefits.  Judge Bernthal noted that, in <u>Glenn</u>, the Supreme Court confirmed that a conflict of interest is created where a single entity performs this dual role.  Judge Bernthal stated that the Court further held that the conflict of interest was a factor for a court to consider in determining whether a plan administrator had abused its discretion in denying benefits.  Judge Bernthal concluded that "no such dual role situation is present in the case before this Court."  Judge Bernthal further stated that <u>Glenn</u> did not alter the Supreme Court's prior holding in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).  Judge Bernthal stated that, as to the issue presented in Plaintiff's Motion to Re-open, the authority from the Seventh Circuit following <u>Firestone</u> is not impacted.  Judge Bernthal therefore denied Plaintiff's Motion to Re-open Discovery.

This court agrees completely with Judge Bernthal's well-reasoned analysis.  Therefore, Plaintiff's Motion to Defer Ruling (#26) is hereby DENIED as well.  As for Plaintiff's Motion to

Submit Additional Authority (#25), this court will GRANT the motion and will consider the Glenn decision to the extent that it is applicable to any issue in this case.

ANALYSIS

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Semien v. Life Ins. Co. of N. Am., 436 F.3d 805, 812 (7th Cir. 2006).  In addition, at the summary judgment stage, all inferences are drawn in favor of the non-moving party.  Semien, 436 F.3d at 812.  However, when a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Maclin v. SBC-Ameritech, 2007 WL 683782, at *6 (N.D. Ill. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## II.  STANDARD UNDER ERISA

Under ERISA's civil enforcement provision, § 1132(a)(1)(B), the judicial standard of review hinges on whether the language of the policy grants the plan administrator or fiduciary discretionary authority in making benefit determinations or to construe the terms of the plan.  See Firestone, 489 U.S. at 115.  Where the plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits, a deferential standard of review is appropriate.  Glenn, ___ U.S. ___, 128 S. Ct. at 2348; see also Pakovich v. Broadspire Servs., Inc., 535 F.3d 601, 605-06 (7th Cir. 2008); Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir. 2001).  Under the deferential standard applicable when the plan affords the plan administrator broad discretion to

interpret the plan and determine benefit eligibility, "judicial review of the administrator's decision to deny benefits is limited to the arbitrary-and-capricious standard." Mote v. Aetna Life Ins. Co., 502 F.3d 601, 606 (7th Cir. 2007). In this case, the parties agree that the Plan confers on the administrator that type of discretionary authority so that this court's review is based upon an arbitrary and capricious standard. Under the arbitrary and capricious standard, courts "will overturn a plan administrator's decision 'only . . . if it is downright unreasonable.'" Mote, 502 F.3d at 606 (citations omitted); see also Williams v. Aetna Life Ins. Co., 509 F.3d 317, 321 (7th Cir. 2007). A court's review under the arbitrary and capricious standard is limited to the evidence in the administrative record. Hess v. Reg-Ellen Machine Tool Corp., 423 F.3d 653, 662 (7th Cir. 2005); Silva v. Fortis Benefits Ins. Co., 437 F. Supp. 2d 819, 828 (N.D. Ill. 2006); see also Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 981-82 (7th Cir. 1999).

However, "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 830 (2003); see also Schoonover v. Central Laborers' Pension Fund, 2008 WL 1902043, at *7 (C.D. Ill. 2008). Therefore, the arbitrary and capricious standard of review "is not a rubber stamp." Williams, 509 F.3d at 321, quoting Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 774 (7th Cir. 2003). "Deferential review is not no review" and "deference need not be abject." Hess, 274 F.3d at 461, quoting Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir. 1996); see also Hackett, 315 F.3d at 774. "In some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." Hess, 274 F.3d at 461.

In order for this court to grant summary judgment based upon the applicable standard of

review, this court must find that, when taken in the light most favorable to Plaintiff, there is no evidence that Defendant's denial of benefits was arbitrary and capricious. <u>Semien</u>, 436 F.3d at 812. This court will uphold the Plan's determination "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." <u>Williams</u>, 509 F.3d at 321-22.

### III. MERITS OF THIS CASE

Defendant argues that it is entitled to summary judgment on Plaintiff's ERISA Complaint because its decision to discontinue Plaintiff's long-term disability benefits under the Plan was not arbitrary and capricious. Defendant contends that its Claims Administrator had ample basis to conclude from the record that Plaintiff was not disabled under the terms of the Plan.

In Response, Plaintiff argues that Defendant's Motion for Summary Judgment should be denied because genuine issues of material fact exist in this case. Plaintiff contends that these issues are: (1) whether the Plan failed to comply with the law and regulations which require that a Plan Participant be provided a full and fair review of the decision denying the claim; and (2) whether the Plan's termination of Plaintiff's benefits was arbitrary and capricious.

In its Reply, Defendant contends that the only question before this court is whether the Plan's decision was arbitrary and capricious. Defendant argues that its decision was clearly not arbitrary and capricious because the original decision to discontinue Plaintiff's benefits was based upon the opinion of her own treating physician, Dr. Nockels, who repeatedly cleared her to return to work and the decision to deny her appeal was appropriate because the reviewing physicians' opinions agreed

with Plaintiff's treating physician's earlier conclusion that Plaintiff could return to work in a sedentary capacity.  Defendant also argues that Plaintiff's focus on purported procedural errors is irrelevant to this court's determination regarding whether Defendant's decision was arbitrary and capricious.

### A.  ARBITRARY AND CAPRICIOUS

This court agrees with Defendant that the issue before this court is whether Defendant's decision was arbitrary and capricious given the evidence in the administrative record.  See Shyman v. Unum Life Ins. Co., 427 F.3d 452, 455 (7th Cir. 2005).  Plaintiff argues that Defendant's decision to discontinue her disability benefits was improper because Defendant initially found Plaintiff eligible for benefits and then discontinued them, even though the restrictions imposed by Dr. Nockels actually increased following the initial eligibility decision.  This court agrees with Defendant that this is a misreading of the administrative record.  At the time Plaintiff was found eligible for disability benefits, Dr. Nockels had stated that Plaintiff was restricted to a "sedentary position," with a restriction of "no repetitive bending, lifting, twisting, duration 3 months (emphasis added)" and a permanent restriction of no lifting over 50 pounds.  At the time Defendant determined that Plaintiff's disability benefits should be discontinued, Dr. Nockels had completed a "Certificate to Return to Work or School" for Plaintiff which stated that Plaintiff could work at a "Moderate work level" and had permanent work restrictions of no lifting over 20 pounds and "Limited bending, twisting[,] Frequent position changes (emphasis added)."  Plaintiff argues that the restrictions were increased based upon the fact that Dr. Nockels changed the permanent lifting restriction from no lifting over 50 pounds to no lifting over 20 pounds.  However, Defendant is correct that Plaintiff's work level had been increased from "sedentary" to "moderate" and the restrictions of no repetitive

21

bending, lifting or twisting for three months were replaced with a permanent restriction of limited bending and twisting, with frequent position changes.  This court agrees with Defendant that the Plan could reasonably read Dr. Nockels' restrictions on Plaintiff's ability to work as lessening. Accordingly, it was far from illogical that the second Transferrable Skills Assessment identified six sedentary jobs Plaintiff could perform that the prior assessment did not.  Plaintiff's benefits were discontinued because six jobs were identified that Plaintiff could perform with her work restrictions. Therefore, this court concludes that Defendant's decision to discontinue Plaintiff's disability benefits was not "downright unreasonable."  See Ruiz v. Cont'l Cas. Co., 400 F.3d 986, 991-92 (7th Cir. 2005).

Plaintiff has relied on Hackett in support of her argument that Defendant's decision to terminate her benefits was arbitrary and capricious.[3]  In Hackett, the court stated that, even under deferential review, "we will not uphold a termination when there is an absence of reasoning in the record to support it."  Hackett, 315 F.3d at 774.  The court then determined that the decision to terminate disability benefits was arbitrary and capricious because the conclusion that Hackett was able to work was "contrary to numerous prior opinions" and "there were no articulated reasons given for [the defendant's] rejection of the evidence that Hackett was unable to work."  Hackett, 315 F.3d at 775.  In this case, as noted, Defendant's decision was based upon Plaintiff's physician's determination that Plaintiff could return to work, with restrictions, and a determination that there were six jobs Plaintiff could perform with her work restrictions.  This court therefore concludes that

---

[3]  Plaintiff has also cited non-ERISA state law cases and a Seventh Circuit case involving social security disability.  This court agrees with Defendant that these cases are not relevant to the issue before this court.  See Black & Decker, 538 U.S. at 832-33 (recognizing that there are critical differences between the Social Security disability program and ERISA benefit plans).

Hackett does not support Plaintiff's contention that the decision in this case was arbitrary and capricious.

Plaintiff also argued that Defendant should have reinstated her benefits after she appealed and provided her own statement of her condition and additional information from Dr. Nockels. Plaintiff also argued that Defendant should not have relied on the opinions provided by Dr. Al-Shathir and Dr. Mickle.  Plaintiff has included lengthy arguments regarding the inadequacy of those opinions.

This court agrees with Defendant that Defendant was not required to accept Dr. Nockels' new assessment that Plaintiff was unable to work where he had previously stated that she could work with restrictions and the medical evidence did not substantiate the change in his position.  The Plan specifically requires "objective medical documentation."  It is not arbitrary and capricious to deny benefits where a plaintiff failed to submit objective medical evidence to support a treating physician's opinion that the plaintiff is unable to work.  See Williams, 509 F.3d at 323-24; Shyman, 427 F.3d at 456; Ruiz, 400 F.3d at 992.  In addition, the opinions of Dr. Al-Shathir and Dr. Mickle were consistent with Dr. Nockels' assessments that Plaintiff could return to work in a sedentary capacity.  This court concludes that it was not arbitrary and capricious for Defendant to consider these assessments in denying Plaintiff's appeal.  See Semien, 436 F.3d at 812-13.

Based upon the administrative record, this court concludes that the Plan's determination should be upheld under the arbitrary and capricious standard because: "(1) it is possible to offer a reasoned explanation, based on the evidence" for the Plan's decision to discontinue benefits and to deny Plaintiff's appeal; "(2) the decision is based on a reasonable explanation of relevant plan documents;" and "(3) the administrator has based its decision on a consideration of the relevant

factors that encompass the important aspects of the problem."  See Williams, 509 F.3d at 321-22.

### B.  PURPORTED PROCEDURAL ERRORS

This court agrees with Defendant that Plaintiff's lengthy litany of procedural errors is irrelevant to this court's determination regarding whether Defendant's decision was arbitrary and capricious.

Plaintiff argues that she did not have a "full and fair" review of her claim.  She argues that the administrative record does not specifically state what "the file" provided to Insurance Appeals consisted of.  Plaintiff also pointed out that the record shows that the reports of Dr. Al-Shathir and Dr. Mickle, both dated 2/23/07, were faxed to Defendant.  The fax transmittal cover sheet has a handwritten date of 2/23/07 and a type face date of February 19, 2007.  Plaintiff asks, "How is it possible that the printed date precedes the date of these physician reports?"[4]  Plaintiff also complains that these reports were not provided to Plaintiff or her treating physician.  Plaintiff further complains that she was never informed that Dr. Mickle had requested that he be provided with an FCE.  Plaintiff goes on to complain that the letter denying her appeal stated that "the decision of the Unit is final" and she was not sent an appeal packet.  Plaintiff argues that she should have received copies of the reports prepared by Dr. Al-Shathir and Dr. Mickle and should have been allowed to appeal from the denial of her appeal.  Plaintiff relies on Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621 (7th Cir. 2005).

---

[4]  Plaintiff argues that some kind of "game" was played based upon the date discrepancy on the fax and how quickly the doctors' reports were generated.  Plaintiff opines that Defendant "pre-determined" her appeal and then had to "paper the file" to justify its decision.  In its Reply, Defendant argues that the only reasonable explanation for the date discrepancy on the fax transmittal cover sheet is that there was an incorrect date stamped by the fax machine.  This court agrees that, because the doctors' reports were clearly dated 2/23/2007, the type face date on the fax transmittal cover sheet of February 19, 2007, was simply incorrect.

Plaintiff is correct that "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." Hackett, 315 F.3d at 775, quoting Halpin v. W.W. Grainger, 962 F.2d 685, 688-89 (7th Cir. 1992).   This court concludes that Defendant's letter of November 6, 2006, which informed Plaintiff that her disability benefits were discontinued as of 10/01/2006, adequately informed her of the reason for the decision and of her right to an appeal of the decision. See Moats v. Hartford Life & Acc. Ins. Co., 2006 WL 6103022, at *11-12 (W.D. Wis. 2006).   In addition, the letter informed Plaintiff that she could request copies of any documents relevant to her claim, free of charge. See Moats, 2006 WL 6103022, at *13.   The letter also informed Plaintiff that she could "submit additional medical or vocational information, and any facts, data, questions or comments [she] deem[ed] appropriate for us to give your appeal proper consideration." In response to the letter, Plaintiff requested an appeal and provided additional information to Defendant.

The focus of Plaintiff's argument is that she was not allowed to file an appeal following the denial of her appeal so that she could respond to the opinions of Dr. Al-Shathir and Dr. Mickle. Plaintiff argues that, under ERISA, Defendant was required to provide her with copies of the doctors' reports so she could submit additional information to counter the doctors' conclusions. The case Plaintiff has relied on, Schneider, does not support her argument.  In Schneider, the plaintiff's disability benefits were terminated based upon an independent medical evaluation performed by Dr. Michael J. Spierer, a psychologist, which concluded that the plaintiff was capable of returning to work and based upon a letter from her psychiatrist, Dr. Samo.  Schneider, 422 F.3d at 624.  The letter informing the plaintiff that her benefits were terminated stated that, based upon these documents, "you have recovered and can return to work." Schneider, 422 F.3d at 624.  The Seventh

25

Circuit concluded that this letter failed to meet ERISA's requirement to "set forth the specific reasons for the termination of benefits." Schneider, 422 F.3d at 628.  The Seventh Circuit also stated that the plaintiff was not provided with the nine and one-half page report which Dr. Spierer prepared and on which Defendant based its decision to terminate benefits.  Schneider, 422 F.3d at 628.  The court therefore concluded that, because the plaintiff "did not know what reasons motivated Dr. Spierer's conclusion that she was no longer disabled, she could hardly seek review of that conclusion." Schneider, 422 F.3d at 628.

    In this case, by contrast, the doctors' opinions were obtained by Defendant after Plaintiff appealed and were relied upon by Defendant in denying Plaintiff's appeal.  ERISA only requires that plans provide a single procedure for appealing adverse benefit determinations.  See 29 C.F.R. § 2560.503-1(h)(1).  Plaintiff here was allowed to appeal the adverse decision which discontinued her benefits.  Defendant is correct that, under ERISA, it was not required to provide Plaintiff with another appeal procedure so she could counter the opinions of the doctors obtained for purposes of her appeal.

    This court also finds unavailing Plaintiff's complaints that Defendant did not inform her that Dr. Mickle had requested an FCE and did not request an FCE or request additional information from Dr. Nockels.  Under the applicable regulations, the only requirement is that the Administrator evaluate the material submitted by Plaintiff in support of her appeal.  See 29 C.F.R. § 2560.503-1(h)(2)(iv).  In addition,  Defendant is correct that it was not required to consider the additional medical evidence Plaintiff submitted after her appeal was denied and its decision was final.  See Donato v. Metro. Life Ins. Co., 19 F.3d 375, 380 (7th Cir. 1994) (administrator is "bound only to consider what evidence and information it had before it").

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion to Submit Additional Authority in Response to Motion for Summary Judgment (#25) is GRANTED.  This court has considered the <u>Glenn</u> decision to the extent that it is applicable to any issue in this case.

(2) Plaintiff's Motion to Defer Ruling on Defendant's Motion for Summary Judgment Pending Additional Authority (#26) is DENIED.

(3) Defendant's Motion for Summary Judgment (#19) is GRANTED.  Judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's Complaint (#1).

(4)  This case is terminated.

ENTERED this  4th  day of November, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE